## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| ALFREDO GANDARA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION No. 4:10-cv-4243 |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social | § | |
| Security Administration, | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

In this case seeking judicial review of the denial of Social Security benefits, Plaintiff Alfredo Gandara brought this action pursuant to 42 U.S.C. § 405(g) for review of the final determination by Social Security Administration Commissioner Michael J. Astrue ("Commissioner") that he is not entitled to receive Title II social security disability insurance nor Title XVI supplemental security income benefits. Before this Court is Gandara's Motion for Summary Judgment and Supporting Brief and the Commissioner's Motion for Summary Judgment (Dkt. 13, 14).[1] Having considered the parties' briefing, the applicable legal authorities, and all matters of record, Gandara's motion is **denied** and summary judgment is **granted** for the Commissioner.

---

[1]   The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. 636(c) and Federal Rule of Civil Procedure 73. (Dkt. 9).

## BACKGROUND

Gandara is a 48-year-old man with an 11th grade education.[2] On November 21, 2006, he sustained an on the job back injury while unloading furniture from a truck.[3] Due to his injury, Gandara filed both a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income on January 29, 2008.[4] Gandara alleged his disability began on November 22, 2006.[5] Both of these claims were denied initially and upon reconsideration.[6] Gandara requested a hearing by an administrative law judge ("ALJ").[7] At the hearing, Gandara appeared with his attorney and the ALJ heard testimony from Gandara, an impartial medical expert (Melissa Neiman, M.D.) and an impartial vocational expert (Carolyne Fisher).[8] Following the hearing, the ALJ issued a decision that Gandara was not disabled.[9]

Gandara requested a review of the ALJ's decision and the Appeals Council denied his request.[10] He has now appealed to this Court and filed a motion for summary judgment arguing that the ALJ's decision was in error. (Dkt. 1, 13).

---

[2]     Tr. at 172, 206.
[3]     Tr. at 262.
[4]     Tr. at 119-127.
[5]     Tr. at 119-127.
[6]     Tr. at 61-80.
[7]     Tr. at 81-82.
[8]     Tr. at 25-26.
[9]     Tr. at 10-20.
[10]    Tr. at 1-3.

2

## MEDICAL EVIDENCE OF PHYSICAL IMPAIRMENTS

There is some medical evidence of Gandara having problems with his neck and back before his accident in 2006. Gandara sustained a back injury in 1998 and had surgery repairing his L4 and L5 discs.[11] After another back injury in 2004, Gandara complained of low back pain, burning and numbness in both legs.[12] An examination revealed muscle spasms on forward flexing, with positive straight leg testing on both sides at 45 degrees on the left and 60 degrees on the right.[13] Magnetic resonance imaging (MRI) of Gandara's back on September 2, 2005, showed the screws from the 1998 surgery in good positions.[14] While there was a significant filling defect present, the doctor noted that it is not uncommon to see asymmetry in this area.[15] Follow-ups over the next year show that the pain in his back and legs had not gone away with treatment and more tests were recommended.[16]

Gandara then suffered the back injury at issue in this case on November 21, 2006.[17] An emergency room visit showed evidence of degenerative osteoarthritis, but no other problems.[18] An MRI performed one month later showed an unremarkable thoracic spine, some broad based posterior disc herniation in the lower cervical spine, and post

---

[11]     Tr. at 230.
[12]     Tr. at 230.
[13]     Tr. at 231.
[14]     Tr. at 226.
[15]     Tr. at 226.
[16]     Tr. at 248-254.
[17]     Tr. at 262.
[18]     Tr. at 270.

surgical changes at L4-5 suggesting mild arachnoiditis and some disc bulge/spondylosis at the L3-L4 levels.[19]

An MRI in February 2007 showed a small disk bulge at C5-6 and at C6-7 with some entrapment of the nerve at the exit at that level.[20]  Gandara was referred to Dr. Kushwaha, where he was examined on March 27, 2007.[21]  Gandara complained of progressively worsening pain after his injury in 2006, marked by pain in the lower back area and in both legs, with the left affected more than the right, numbness and tingling in both legs, arms, and face, neck pain, frequent headaches, decreased grip strength, sleep disturbance and symptoms of ataxia.[22]  Upon physical examination, Dr. Kushwaha found a decreased range of motion with pain on motion of the back and neck with some spasm.[23]  There was also a positive Spurling sign on the left.[24]  There was weakness of the left intrinsic with slight muscle atrophy.[25]  Finally, there was decreased sensation in the C6-7 and L5 distribution, along with numbness in the L5.[26]  Motor strength was found to be intact.[27]  Dr. Kushwaha noted that if Gandara did have arachnoiditis in his lumbar spine as confirmed by a myelography, he would not recommend any further surgery for his back.[28]

---

[19]   Tr. at 272-274.
[20]   Tr. at 300.
[21]   Tr. at 297-299.
[22]   Tr. at 297.
[23]   Tr. at 298.
[24]   Tr. at 298.
[25]   Tr. at 298.
[26]   Tr. at 298.
[27]   Tr. at 298.
[28]   Tr. at 298.

A myelogram was performed.  The results of this procedure confirmed some disc herniation and stenosis at C5-6 and C6-7, but they did not show any significant disc herniation or stenosis in the lumbar spine.[29]  As a result, Gandara's doctors determined that he was a good candidate for C5-C7 anterior discectomy and fusion surgery.  Gandara underwent this procedure in May of 2007.[30]  By August 7, 2007, Gandara's neck was noted to be improving and x-rays indicated intact hardware from his previous surgery and progress of the fusion.[31]  However, Gandara reported persistent pain in his lower back.[32]  A discogram confirmed concordant pain at L3-4 and L2-3 at the disc above his previous fusion. [33]  Dr. Kushwaha proposed surgery extending the fusion to L2 with instrumentation and a bone graft.[34]  It was noted that Gandara reportedly had good results from his neck surgery and was interested in pursuing the recommended lumbar surgery to see if he could achieve similar improvement in his back.[35]  When seen again in November of 2007, Gandara declined the surgery and Dr. Kushwaha released him for light duty work.[36]

During a consultative physical examination performed by Dr. Isaac on March 18, 2008, Gandara reported occasional stiffness and mild pain in the neck with pain radiating into the left arm.[37]  He reported using a cane to walk for eight months and that he was

---

[29]     Tr. at 296.
[30]     Tr. at 295-296.
[31]     Tr. at 293.
[32]     Tr. at 293.
[33]     Tr. at 291.
[34]     Tr. at 291.
[35]     Tr. at 291.
[36]     Tr. at 290.
[37]     Tr. at 306.

able to walk without it for 40-50 feet.[38]  In terms of activities of daily living, Gandara reported that he did minor household chores, was capable of caring for his personal needs, drove short distances, watched television, read, and interacted with family and friends.[39]  He was reported to be 71" tall, weighing 239 pounds and able to sit for 60 minutes and stand for 30 minutes, carry 10 pounds to 40 feet, and climb a flight of stairs.[40]

Upon examination, Gandara was noted to have normal muscle mass, 5/5 muscle strength in all extremities, and no weakness or atrophy of the muscles.[41]  No sensory deficits were noted and deep tendon reflexes were normal.[42]  He was further noted to have normal function of the extremities with normal, full range of motion in all the joints.[43]  Hand grip, pinch, and grasp were reported to be normal, with good strength noted in both hands.[44]  Lumbar spine flexion was limited to 40 degrees.[45]  Gandara could not squat and straight leg raising tests were positive bilaterally at 20 degrees.[46]  X-rays of the lumbar spine showed evidence of the previous lumbar fusion with solid union and alignment noted.[47]  Re-herniation of a lumbar disc could not be ruled out.[48]  Diagnostic impression also included a history of cervical spine fusion surgery, mild hypertension, a

---

[38]   Tr. at 306.
[39]   Tr. at 307.
[40]   Tr. at 307.
[41]   Tr. at 308.
[42]   Tr. at 308.
[43]   Tr. at 308.
[44]   Tr. at 308.
[45]   Tr. at 308.
[46]   Tr. at 308.
[47]   Tr. at 310.
[48]   Tr. at 309.

history of fatty liver and Hepatitis C by Gandara's report, and some uncorrected refractive errors (visual acuity 20/50 in both the left and right eyes).[49]

A physical residual functional capacity (RFC) assessment was conducted on April 10, 2008 by Dr. Cremona.[50]  He evaluated Gandara as being able to occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk for 6 hours out of 8, and sit for 6 hours out of 8.[51]  Dr. Cremona found that Gandara could not crawl or climb ladders, ropes or scaffolds, and could only occasionally climb stairs and ramps, stoop, and crouch.[52]  He could frequently balance and kneel.[53]  He had no manipulative or visual limitations.[54]

On June 16, 2008, Gandara underwent a physical exam by Dr. Kushwaha that revealed a decreased range of motion in his back along with pain and some spasm.[55]  However, Gandara's motor and sensory exam revealed nothing wrong.[56]  Later that day Gandara underwent the second back surgery.[57]  He had an anterior and posterior spinal fusion at the L2-L4 levels with instrumentation, as well as removal of hardware and exploration of fusion at L4-L5.[58]  He was admitted and discharged with stenosis, status post fusion, discogenic pain, and depression.[59]

---

[49]     Tr. at 307-309.
[50]     Tr. at 340-347.
[51]     Tr. at 341.
[52]     Tr. at 342.
[53]     Tr. at 342.
[54]     Tr. at 343.
[55]     Tr. at 392-393.
[56]     Tr. at 393.
[57]     Tr. at 361-362.
[58]     Tr. at 361.
[59]     Tr. at 361.

A physical RFC assessment was done by James Wright on July 22, 2008.[60]   The RFC assessment noted that Gandara could occasionally lift 20 pounds and frequently lift 10 pounds.[61]   It also said he could sit for about 6 hours and stand for about 6 hours in an 8-hour workday.[62]   He had no postural, manipulative or visual limitations.[63]   It stated that his impairment was currently severe, but would respond to treatment within a 12 month period.[64]

Follow-ups by Dr. Kushwaha showed his symptoms slowly getting better, although he recommended no bending or lifting on June 24, 2008.[65]   In November of 2008, there was still residual back pain limiting Gandara's ability to bend and lift.[66]   Dr. Kushwaha did not believe Gandara would ever be able to go back to his previous line of employment as a furniture installer.[67]   During the last visit on February 10, 2009, Gandara reported that his back and neck were doing well, however new pain had arisen above the place of the second surgery.[68]   On physical examination, he had a decreased range of motion with pain on motion of the neck, with a positive Spurling sign.[69]   X-rays of the surgery showed the fusion and hardware to be intact.[70]   Dr. Kushwaha's impression

---

[60]   Tr. at 429-436.
[61]   Tr. at 430.
[62]   Tr. at 430.
[63]   Tr. at 431-432.
[64]   Tr. at 434.
[65]   Tr. at 456, 458.
[66]   Tr. at 455.
[67]   Tr. at 455.
[68]   Tr. at 454.
[69]   Tr. at 455.
[70]   Tr. at 455.

was of a cervical and lumbar disc herniation, and he wanted to get a new MRI of the

cervical spine to determine further treatment.  However, no further testing was done.[71]

Dr. Kushwaha completed a medical source statement on May 4, 2009.[72]

According to the statement, Gandara could only stand or walk for one hour and could

only sit for one hour during an eight-hour workday.[73]  He would also require a two-hour

lying down rest period during an eight-hour workday for pain management and/or

fatigue.[74]  He could only occasionally lift 20 pounds and balance, and could never climb,

stop, crouch, kneel, or crawl.[75]  He could only have occasional use of both his arms while

reaching, grasping or using his fingers.[76]

### *MEDICAL EVIDENCE OF MENTAL IMPAIRMENTS*

Gandara underwent a consultative mental status examination on March 25, 2008.[77]

He reported some change in appetite, increased irritability, loss of concentration, loss of

libido, and decreased sleep due to pain associated with his physical impairment.[78]  He has

a suspended driver's license due to traffic violations but can use public transportation

independently.[79]  He is able to perform all hygiene, grooming, and dressing tasks, and see

to his nutritional needs independently but performs all chores at a slower pace than before

---

[71]     Tr. at 455.
[72]     Tr. at 462-465.
[73]     Tr. at 462.
[74]     Tr. at 463.
[75]     Tr. at 463.
[76]     Tr. at 464
[77]     Tr. at 312-321.
[78]     Tr. at 316.
[79]     Tr. at 317.

the accident.[80]  He does require assistance in the preparation of cooked meals and completing chores, unless he is able to rest intermittently to diminish discomfort.[81] Gandara reports periodic decompensation marked by extreme physical discomfort resulting in the above symptoms.[82]  Medical reports opine that Gandara suffers from a pain disorder that will improve with the resolution of his underlying medical concerns.[83] He had clear speech, logical and organized thought processes, no perceptual abnormalities, a talkative and cooperative mood and average intellectual functioning.[84] He presented with a sad affect and a dysphoric mood and was given a guarded to fair prognosis.[85]

This evaluation was consistent with the RFC assessment done on April 8, 2008, listing moderate difficulties in concentration and only mild difficulties in daily living activities and social functioning, however no episodes of decompensation were found.[86]

Additional medical evidence of record shows that Gandara sought mental health treatment through the Harris County Mental Health and Mental Retardation Authority (MHMRA) in May and July of 2008 for major depressive disorder.[87]  It was noted that much of Gandara's reported symptoms were directly due to physical issues.[88]  In May, his mental health was listed as having a 3/5 impact on his functional impairment, and a 1/5

---

[80]    Tr. at 317.
[81]    Tr. at 317.
[82]    Tr. at 317.
[83]    Tr. at 320.
[84]    Tr. at 318-319.
[85]    Tr. at 319-320.
[86]    Tr. at 326, 336.
[87]    Tr. at 467-493.
[88]    Tr. at 468.

for employment problems.[89]  He had poor concentration, sleep disturbances, a passive suicidal ideation and some hallucinations.[90]  In July, Gandara was given a global assessment functioning (GAF) score of 45.[91]  During the exam, Gandara presented with qualities similar to the ones present on the March and May exams, along with average intellectual functioning.[92]  In November of 2008, it was noted that the Prozac Gandara was taking for his depression was not helping the condition.[93]

In April of 2009, Gandara again reported some auditory and visual hallucinations along with passive suicidal ideations.[94]  He was given a provisional diagnosis of major depressive disorder with psychotic features, along with the same GAF as before, 45.[95]  Gandara was again seen in May 2009, but it was noted that he had not been taking medications since November 2008 due to a lapse of insurance and expiration of his gold card, which allowed him access to treatment.[96]  He was given a provisional diagnosis of major depressive disorder so he would at least be able to start services until he could get another gold card.[97]  He received a GAF score of 42 at that time.[98]

## SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to

---

[89]    Tr. at 482.
[90]    Tr. at 483.
[91]    Tr. at 492.
[92]    Tr. at 480.
[93]    Tr. at 440.
[94]    Tr. at 490.
[95]    Tr. at 490.
[96]    Tr. at 467, 468.
[97]    Tr. at 468.
[98]    Tr. at 470.

make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp.*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005) (internal citations and quotation marks omitted).

## STANDARD OF REVIEW

When judicially reviewing a determination that an applicant is not entitled to benefits, courts determine "(1) whether the Commissioner applied the proper legal standard; and (2) whether the Commissioner's decision is supported by substantial evidence." *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002); *see also* 42 U.S.C. § 405(g) (2010). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990). A finding of no substantial evidence is warranted only "where there is a conspicuous absence of credible choices or no contrary medical evidence." *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988) (internal quotation marks and citation omitted). The court may not re-weigh

the evidence in the record, nor try the issues de novo, nor substitute the court's judgment for the Commissioner's, even if the evidence preponderates against the Commissioner's decision. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

## DISABILITY EVALUATION

The Commissioner employs a five-step inquiry to determine whether a claimant is disabled and thus entitled to disability benefits:

1. Is the claimant engaged in substantial gainful activity, i.e. working? If so, the claimant is not disabled. If not, the inquiry proceeds to question two.

2. Does the claimant have a severe impairment? If not, the claimant is not disabled. If so, the inquiry continues to question three.

3. Does the severe impairment meet or equal one of the listings set forth in regulation known as Appendix 1? If so, the claimant is disabled. If not, the inquiry continues to question four.

4. Can the claimant still perform past relevant work? If so, the claimant is not disabled. If not, the inquiry proceeds to question five.

5. Considering the claimant's age, education, work experience, and residual functional capacity, is there work that the claimant can do? If so, the claimant is not disabled. If not, the claimant is disabled.

*See* 20 C.F.R. § 404.1520(a)(4)(I)-(v) (2009); *Newton v. Apfel*, 209 F.3d 448, 453 (2000). At the first four steps, the claimant bears the burden of proof; at the final step, the Commissioner does. *Waters*, 276 F.3d at 718. "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

At steps one and two, the ALJ found that Gandara had not been engaged in substantial gainful activity and had two severe impairments: degenerative disc disease of

the cervical and lumbar spines status post fusion surgeries and obesity.[99]  At step three,

the ALJ concluded that these severe impairments did not meet or equal a listed

impairment for a presumptive disability under the regulations.[100]  At step four, the ALJ

found that Gandara had the RFC to perform light work with limitations, which did not

allow for him to work at his previous job.[101]  At step five, the ALJ found that Gandara

retained the ability to perform other work existing in significant numbers in the national

economy.[102]  Consequently, the ALJ found that Gandara was not disabled within the

meaning of the Social Security Act.[103]

## ANALYSIS

Gandara asserts that he became disabled on November 22, 2006, as a result of an

on-the-job back injury sustained while moving furniture.[104]  He asks the Court to reverse

the Commissioner's decision to deny him disability benefits, and to render a judgment in

his favor, for a number of reasons.[105]

Gandara argues that the ALJ's decision is not supported by substantial evidence

because the ALJ: (1) improperly determined his back injury did not meet the

requirements of listed impairment 1.04A or 1.04B related to spine disorders;[106] (2)

improperly determined his physical RFC; (3) improperly determined his mental RFC;[107]

---

[99]     Tr. at 12.
[100]    Tr. at 14.
[101]    Tr. at 16, 18.
[102]    Tr. at 18.
[103]    Tr. at 19.
[104]    Tr. at 262.
[105]    Pl.'s Brief at 1.
[106]    Pl.'s Brief at 4-9.
[107]    Pl.'s Brief at 9-18.

and (4) made an improper step five finding by determining that Gandara can perform
other work existing in significant numbers in the national economy without support from
substantial evidence.[108]

### A.    Step Three Analysis of Listed Spinal Disorders

First, Gandara argues that he meets the requirements of Listings 1.04A and 1.04B,
pertaining to disorders of the spine.[109]  A claimant cannot be found disabled pursuant to
the Appendix 1 Listings unless he can show that he meets all of the specified medical
criteria of any particular listing. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).   The
standard is similarly demanding for individuals seeking to establish their impairments
equal the requirements of a Listing. *See Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir.
1990) (claimant must provide medical findings that support each of the criteria for an
equivalent impairment determination).

The ALJ determined that Gandara did not meet a listed impairment.[110]  At the
hearing, an impartial medical expert, Dr. Melissa Neiman, summarized the objective

---

[108]    Pl.'s Brief at 18-19.
[109]    Pl.'s Brief at 4; Under 1.04A and 1.04B, an individual is disabled if they have a disorder
of the spine (e.g. herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis,
degenerative disc disease, facet arthritis, vertebral fracture), resulting in the compromise of a
nerve root (including the cauda equine) or the spinal cord, with either:
  A. Evidence of nerve root compression characterized by neuro-anatomic
     distribution of pain, limitation of motion of the spine, motor loss (atrophy with
     associated muscle weakness or muscle weakness) accompanied by sensory or
     reflex loss and, if there is involvement of the lower back, positive straight-leg
     raising test (sitting and supine); or
  B. Spinal arachnoiditis, confirmed by an operative note or pathology report of
     tissue biopsy, or by appropriate medically acceptable imaging, manifested by
     severe burning or painful dysesthesia, resulting in the need for changes in
     position or posture more than once every 2 hours
20 C.F.R. pt. 404, subpt. P, app. 1, §§ 1.04A, 1.04B.
[110]    Tr. at 14.

15

medical evidence of record with respect to Gandara's physical impairments and noted that Gandara has osteoarthritis of the cervical and lumbar spines and is obese.[111]  She noted no recent objective medical evidence to correlate with his pain complaints, noting that the last MRI studies included in the exhibit file were performed prior to his surgeries, and she would expect the anatomical lesions present at that time to be corrected by the surgeries.[112]  Dr. Neiman was of the opinion that Gandara did not meet and/or equal the Listing 1.04 criteria addressing disorders of the spine.[113]

The Court agrees with the assessments of the ALJ and Dr. Neiman.  While there may have been some objective medical evidence in the past that would support a claim for disability under a Listing, there is nothing evident in the medical records after the second back surgery that does so.  As Dr. Neiman stated, she would expect the anatomical lesions present previously to be corrected by the surgeries.[114]  The Court sees no reason or evidence presented why this should not be the case.  Gandara does still have osteoarthritis of the cervical and lumbar spines, however he does not meet all of the other requirements in 1.04A or 1.04B.

### i.   1.04A

In order to qualify under Listing 1.04A, a claimant must present with one of the listed back injuries, along with pain, limitation of motion, motor loss, sensory or reflex loss, and, if the lower back is involved, a positive straight-leg raising test.[115]

---

[111]   Tr. at 45-46.
[112]   Tr. at 46.
[113]   Tr. at 46.
[114]   Tr. at 46.
[115]   *See* note 110.

There is substantial evidence to support the ALJ's decision to deny Gandara's claim that he meets the requirements of Listing 1.04A. Gandara's treating physician, Dr. Kushwaha, cleared him for light work in November of 2007.[116] After this time, and before his second surgery, Dr. Isaac noted that he had 5/5 muscle strength in all extremities, no weakness or atrophy of the muscles, and no sensory deficits.[117] After a second back surgery on June 16, 2008, Dr. Kushwaha noted Gandara had almost full strength of his lower bilateral extremities.[118] Dr. Kushwaha also noted in a follow-up that he had a decreased range of motion with pain.[119] In November 2008, Gandara was neurologically intact despite this decreased range of motion.[120] Through 2009, Dr. Kushwaha did not conduct in-depth physical examinations of Gandara, noting instead that Gandara's back was improving.[121] Thus, while Plaintiff may have experienced some of the findings required to meet Listing 1.04A, he did not manifest all of the specified medical criteria of any particular listing, as the above medical evidence demonstrates that he routinely had normal motor and sensory examinations. *See Zebley*, 493 U.S. at 530. Because there is no further evidence of any motor or sensory loss, there is substantial evidence to uphold a determination by the ALJ that the requirements for listing 1.04A were not met.

---

[116]    Tr. at 290.
[117]    Tr. at 308.
[118]    Tr. at 361.
[119]    Tr. at 455.
[120]    Tr. at 455.
[121]    Tr. at 454, 455, 456.

### ii.    1.04B

In order to qualify under Listing 1.04B, a claimant must have spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medical imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every two hours.[122]

The only mention of arachnoiditis in the medical record is from an MRI performed one month after the initial accident.[123] This MRI "suggested" mild arachnoiditis, which was never confirmed or mentioned again by any other objective medical evidence.[124] In fact, Dr. Kushwaha stated that if Gandara did have arachnoiditis, he would not recommend any further surgery for his back.[125] Dr. Kushwaha subsequently recommended two back surgeries, which the Court finds to be strong evidence that arachnoiditis was not present.[126] Accordingly, the Court concludes that there is substantial evidence to support the ALJ's determination that Gandara did not qualify under 1.04B.

### B. Physical RFC Analysis

The ALJ determined that Gandara retained the physical RFC to perform "light work." Light work is defined by the ability to lift and/or carry, push and/or pull up to 20 pounds occasionally and up to 10 pounds frequently. 20 C.F.R. §§ 404.1567(b) and 416.967(b). In this case, the ALJ limited Gandara's ability to do light work by finding

---

[122]    *See* Note 110.
[123]    Tr. at 272-274.
[124]    Tr. at 272-274.
[125]    Tr. at 298.
[126]    Tr. at 290-291, 296.

that he can only stand and/or walk four hours and sit up to four hours out of an eight-hour workday, both with normal breaks.[127] The ALJ also found that Gandara requires the option to change position at will and can never climb rope, ladders, scaffolding or stairs.[128] He is precluded from balancing, kneeling, crouching, or crawling.[129]

Gandara argues that the ALJ erred in making his physical RFC finding for three reasons. First, the ALJ improperly rejected the physical impairment evidence of treating physician Dr. Kushwaha. Second, Gandara argues that the ALJ's physical RFC assessment is incorrect because he failed to consider evidence of Gandara's obesity. Finally, Gandara argues that the ALJ failed to consider evidence of his medication side effects. (Pl.'s Br. at 14.) According to Gandara, because the ALJ failed to give weight to the opinions of his treating physician Dr. Kushwaha and take into account his obesity and medication side effects, the ALJ erred in determining that he retained the ability to do light work.

### i. Physical RFC Evidence of Treating Physician Dr. Kushwaha

Gandara argues that the ALJ's determination that he could perform light work was not supported by substantial evidence.[130] He argues that the ALJ improperly rejected the physical RFC assessment of Dr. Kushwaha, Gandara's treating physician, and instead gave more weight to the agency's reviewing physician who assessed limitations

---

[127]   Tr. at 16.
[128]   Tr. at 16.
[129]   Tr. at 16.
[130]   Pl.'s Brief at 14-18.

consistent with the ultimate RFC finding.[131]   Gandara contends that Dr. Kushwaha is a specialist in his field, and as his treating physician for over two years he was in the best position to assess his functionality.[132]   The Court disagrees.

The opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability. *Newton*, 209 F.3d at 455.   A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence. *Id.*   The opinion of a specialist generally is accorded greater weight than that of a non-specialist. *Id.*

Even though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining the disability, the ALJ has the sole responsibility for determining a claimant's disability status. *Id.*   The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion. *Id.*   The treating physician's opinions are not conclusive. *Id.*   The opinions may be assigned little or no weight when good cause is shown. *Id* at 455, 456.   Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence. *Id.* at 456.

---

[131]   Pl.'s Brief at 14-16.
[132]   Pl.'s Brief at 15.

The Court finds that, while Dr. Kushwaha does give a medical source statement that would support a finding of disability, the ALJ correctly relied on substantial evidence in determining that Dr. Kushwaha's statement went against the medical record as a whole. Nevertheless, Gandara, citing *Newton v. Apfel*, argues that the ALJ's decision was erroneous because the decision failed to expressly discuss all of the factors set out in 20 C.F.R. §§ 404.1527(d) and 416.927(d),[133] or obtain clarification from Dr. Kushwaha regarding his opinion. Pl.'s Brief at 16; 209 F.3d at 456-58. The Court finds this argument unpersuasive for several reasons.

First, the ALJ is only required to "consider" each factor set out in 20 C.F.R. §§ 404.1527(d) and 416.927(d). *Newton*, 209 F.3d at 456. *Newton* does not hold that each and every factor must be discussed in the opinion. Further, Social Security Ruling ("SSR") 96-8p makes a distinction between what the ALJ must consider and what the ALJ must articulate in the written opinion. *See* SSR 96-8p, 1996 WL 374184 at *7. The ALJ must put in writing how the evidence supports his conclusions and why he treated an opinion as inconsistent with the record, both of which were done here. *Id.*; Tr. at 14 (noting the lack of objective medical evidence).

---

[133]   These factors include:
     (1) the physician's length of treatment of the claimant,
     (2) the physician's frequency of examination,
     (3) the nature and extent of the treatment relationship,
     (4) the support of the physician's opinion afforded by the medical evidence of record,
     (5) the consistency of the opinion with the record as a whole; and
     (6) the specialization of the treating physician.
*See* 20 C.F.R. § 404.1527(d)(2)

In addition, there is evidence contradicting Dr. Kushwaha's opinion in the tests conducted by Dr. Isaac in March of 2008.[134] Dr. Isaac noted that Gandara had normal function of all extremities with full range of motion in all joints, while Dr. Kushwaha said Gandara could only use his arms occasionally.[135]

Upon examination of this record, the Court finds that Dr. Kushwaha's opinion is not supported by the evidence as a whole.  The two exams conducted just before the second back surgery by Dr. Isaac and Dr. Cremona and the exam just after it by Dr. Wright all have significantly different findings than that of Dr. Kushwaha.[136]  In fact, Dr. Cremona's and Dr. Wright's RFC evaluations would give Gandara even less work restrictions than those given by the ALJ, as they had both listed him as being able to sit for six hours and stand for six hours out of an eight-hour workday.[137]

There is also substantial evidence that the ALJ considered the factors laid out in 20 C.F.R. § 404.1527(d)(2).  While Dr. Kushwaha's opinions seemed to go against the record, his views were still reflected in the final RFC assessment adopted by the ALJ. Decreasing the length of time Gandara is able to sit and stand during a workday to four hours from the six hours recommended by Dr. Isaac and Dr. Cremona is an indication that Dr. Kushwaha's opinions were of at least some weight to the ALJ.

Contrary to Gandara's arguments, the Court finds that the ALJ properly considered Gandara's subjective testimony regarding his disability.  Gandara's subjective

---

[134]     Tr. at 306-309.
[135]     Tr. at 308, 464.
[136]     Tr. at 306-309, 340-347, 429-436.
[137]     Tr. at 340-347, 429-436.

assessment is that he can only sit up to fifteen minutes at a time and stand up to twenty minutes at a time, spending 8-12 hours lying down during the day.[138] He also stated he has grip problems and requires the use of a walker to get around.[139] The ALJ must consider a claimant's stated symptoms, including pain, and will take into account their location, duration, frequency and intensity. 20 C.F.R. § 404.1529. In this case there is an impairment that could be reasonably expected to produce such symptoms. However, the intensity, persistence and limiting effects of these symptoms as reported are not consistent with the medical record. The only supporting evidence is the final RFC done by Dr. Kushwaha in May of 2009, and as stated previously this opinion is not consistent with any other medical evidence. Gandara was found to have good grip strength by Dr. Isaac and Dr. Cremona before his second back surgery and by Dr. Wright afterwards.[140] Additionally, the records show no indication that a walker was recommended by Gandara's treating surgeon.

The Court also finds that there is no time in the past where Gandara would have an RFC that would qualify him as disabled. Again, he was released for light work on November 7, 2007 by Dr. Kushwaha, and by November of 2008 Gandara had already been given two RFCs that said he was not disabled and had undergone another surgery to improve his condition.[141]

---

[138]   Tr. at 33.
[139]   Tr. at 32, 38.
[140]   Tr. at 303, 348, 432.
[141]   Tr. at 290, 340-347, 429-436

In this case, Dr. Kushwaha said in his last examination that he would get a new MRI to investigate the new pain Gandara was experiencing higher up in his back.[142]   It is the ALJ's responsibility, before making a determination as to a disability, to develop a claimant's complete medical history covering at least the 12 months preceding the month in which the application for benefits was filed. 20 C.F.R. 404.1512(d).   This information is present here.   However, it is the claimant's responsibility to provide medical evidence of an impairment and how severe it is. 20 C.F.R. 404.1512(c).   Therefore, if a new MRI would be favorable to Gandara's case, it is his responsibility to bring it before the Court. In this case, he did not do so.

### ii.   Obesity Evidence

Gandara also claims that the ALJ erred in his physical RFC assessment because he failed to take Gandara's obesity into consideration.[143]   In support of this argument, Gandara cites SSR 02-1p, which states that an individual with obesity may have problems with the ability to sustain a function over time and that fatigue may affect the ability to sustain work activity.  Pl.'s Brief at 17; SSR 02-1p, 2002 FR 57859.  The Court finds that Gandara's obesity was sufficiently considered in the construction of the ALJ opinion.

First, the ALJ specifically states that he "considered the effect of the claimant's obesity on his ability to perform movement and physical activity within the work environment."[144]  Second, the limitations from obesity would have been covered in the ALJ's analysis of the physical exams conducted on Gandara.   Gandara puts forth no

---

[142]   Tr. at 455.
[143]   Pl.'s Brief at 17.
[144]   Tr. at 16.

medical evidence that shows his obesity would make him unable to do light work. Additionally, Gandara was given the allowance to be able to change positions at will during work.[145] Accordingly, the Court concludes there is substantial evidence that the ALJ considered Gandara's obesity and found that he is able to sustain employment.

### iii.    Side Effects

Finally, Gandara argues because the ALJ failed to consider the side effects caused by his medication his physical RFC assessment was incorrect. [146] Gandara claims to have the side effects of difficulty breathing, sweating, anger and headaches.[147]  SSR 96-7p requires consideration of the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms."  SSR 96-7p, 1996 WL 374186; *See also* 20 C.F.R. §§ 404.1529(c)(3)(iv) and 416.929(c)(3)(iv) (2011).   Under SSR 96-8p, the RFC assessment "must be based on all of the relevant evidence in the case record," including the effects of treatment, such as side effects of medication. SSR 96-8p. However, a claimant's subjective complaints must also be corroborated, at least in part, by objective medical evidence.  *Eovaldi v. Astrue*, 729 F. Supp. 2d 848, 861-62 (S.D. Tex. 2010); *See Wren,* 925 F.2d at 128-29; 20 C.F.R. § 404.1528; SSR 96-8p,

During the ALJ's listing of Gandara's medical claims, the ALJ mentions the side effects of anger, sweating, and difficulty breathing.[148]  The ALJ does not mention the

---

[145]    Tr. at 16.
[146]    Pl.'s Brief at 18.
[147]    Tr. at 17, 35, 184.
[148]    Tr. at 17.

headaches claimed by Gandara.  However, a review of the record yields no instances where Gandara voiced these alleged side effects to a physician to have his medication altered or the symptoms treated.  In the hearing, Gandara only voiced the side effects of sweating and anger when directly asked.[149]  There is also no evidence in the record suggesting that Gandara would be unable to conduct light work even while suffering from these alleged side effects.  The Court finds there is sufficient evidence to establish that the ALJ took Gandara's side effects into consideration when determining Gandara's disability determination.

### C.        Mental RFC Analysis

The ALJ determined that Gandara retained the mental RFC to perform detailed, but not complex, work tasks secondary to his depression.[150]  This assessment was based on the ALJ's finding that Gandara only had a mild limitation in activities of daily living and social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation.[151]

Gandara argues that the ALJ erred in making his mental RFC assessment for four reasons.  First, Gandara argues that the ALJ erred in giving more weight to a non-examining doctor's opinion than to his treating physicians'.[152]  In support of this, Gandara lists his problems of daily living, which he allege go beyond a finding of just a mild

---

[149]     Tr. at 17, 35, 184.
[150]     Tr. at 16.
[151]     Tr. at 15.
[152]     Pl.'s Brief at 10.

limitation.[153]  Second, Gandara argues that the ALJ failed to consider his GAF score, which corresponds to a severe impairment of social and occupational functioning. Next, Gandara argues that the ALJ committed legal error and a procedural defect when he failed to find his mental impairment severe at step two.[154]  Finally, Gandara argues that the ALJ failed to properly consider that he had not continued treatment for his mental impairments because he could not afford to.[155]

### i. Mental RFC Evidence of Non-Examining Physician

Gandara argues that too much weight was given to non-examining physician Dr. Lankford's RFC assessment even though he had not examined Gandara.  Generally, more weight is given to a claimant's treating sources. 20 C.F.R. § 404.1527(d)(2).  An ALJ may properly rely on a non-examining physician's opinion only if it is based on a careful evaluation of the medical evidence and is not contradicted by an examining physician's opinion. *Villa*, 895 F.2d at 1024.  The final determination of disability, however, rests with the ALJ. 20 C.F.R. § 404.1527(e)(1).

In this case, Dr. Lankford's RFC assessment conducted on April 8, 2008 is consistent with the record.[156]  Dr. Lankford was of the opinion that Gandara only had moderate limitations in a few areas, including problems with detailed instruction.[157] Despite Gandara's subjective reports of symptoms, his treating physician, Dr. Lazar, found that his mental faculties such as his judgment, insight, memory, concentration and

---

153     Pl.'s Brief at 11-12.
154     Pl.'s Brief at 10.
155     Pl.'s Brief at 10-11.
156     Tr. at 322-339.
157     Tr. at 322-323.

thought content were all intact.[158]   He could perform all activities of daily living independently, albeit at a slower pace, and could manage all grooming and personal hygiene without assistance.[159]   These positive characteristics were consistent with his visit to the MHMRA of Harris County, where he had a cooperative attitude, normal speech, goal-directed thought processes, fair judgment and insight.[160]   Although found to be suffering from depression, he has not presented any evidence as to his mental limitations that would render him unable to comply with the RFC assessment given to him by the ALJ.

### ii.   GAF Score

Gandara also argues that the ALJ failed to consider his GAF scores ranging from 42 – 50.[161]   Gandara states that GAF scores in this range correspond to severe symptoms and correspond with a severe impairment in social and occupational functioning.[162]   While a GAF score "may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy.   Thus, the ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate."   *Howard v. Commissioner* 276 F.3d 235, 241.   In addition, his examining physician Dr. Lazar stated that Gandara was able to "interact appropriately with peers in work and social

---

[158]   Tr. at 315-320.
[159]   Tr. at 317.
[160]   Tr. at 479-489.
[161]   Pl.'s Brief at 13.
[162]   Pl.'s Brief at 13.

settings."[163]  This shows that while his mood may have been altered by his depression, it did not significantly impact his ability to work.

### iii.   Severity Finding

Next, Gandara argues that the ALJ committed legal error and a procedural defect when he failed to find his mental impairment severe at step two.[164]  An impairment is severe if it is more than a "slight abnormality having such minimal effect on [the] individual that it would not be expected to interfere with the individual's ability to work." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).  If the ALJ uses an incorrect standard, the case must be remanded for reconsideration.  *Loza*, 219 F.3d at 393. However, procedural perfection is not required.  *Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988).  The court will reverse an administrative ruling only if the claimant shows that his substantive rights were prejudiced. *Id.*

Even assuming Gandara's depression should have been marked as severe, this error is not prejudicial and is harmless.  The ALJ included a lengthy discussion of whether the mental impairment suffered by Gandara matched a Listing under step three and included a mental restriction of detailed but not complex work tasks secondary to depression in the RFC assessment.[165]  The ALJ carefully analyzed the effect of Gandara's mental impairments on his ability to work and did not discount it merely because he did not list it as a severe impairment.

---

[163]   Tr. at 317.
[164]   Pl.'s Brief at 10.
[165]   Tr. at 14-16.

### iv. Inability to Afford Treatment

Gandara further argues that the ALJ failed to properly consider that he had not continued treatment for his mental impairments because he could not afford to.[166] Citing *Lovelace v. Bowen*, Gandara argues that if he has no way to obtain prescribed treatment or medication, a condition disabling in fact becomes disabling in law. Pl.'s Brief at 11; 813 F.2d 55, 59 (5th Cir. 1987). The Court again finds this argument unpersuasive.

If a claimant is unable to afford a treatment for a disability, he may be entitled to benefits if he has exhausted all options available to him in the local community. SSR 82-59, 1982 WL 31384. In this case, there is no evidence showing all options have been exhausted in attempting to obtain treatment. In fact, by April 2010, Gandara was cleared for free mental health treatment with MHMR.[167] Furthermore, there is no indication that Gandara would be considered disabled even if he would be unable to obtain treatment.

Accordingly, the Court finds there is substantial evidence to support the ALJ's mental RFC assessment.

### D. Step Five Determination

Finally, Gandara argues that the ALJ made an improper step five finding.[168] He argues that since the ALJ failed to properly evaluate all of his limitations, his RFC was

---

[166]   Pl.'s Brief at 10-11.
[167]   Tr. at 494-496, 499.
[168]   Pl.'s Brief at 19.

improperly determined.[169]   He also argues that the ALJ failed to determine whether Gandara could hold the job for a significant period of time.[170]

As stated previously, the Court finds that substantial evidence upholds the RFC findings of the ALJ.  Finding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can *hold* whatever job he finds for a significant period of time.  *Singletary v. Bowen*, 798 F.2d 818, 822 (5th Cir. 1986).  The Fifth Circuit has held that it is an error when the ALJ fails to determine whether a claimant was capable not only of obtaining, but also maintaining employment.  *Watson v. Barnhart*, 288 F.3d 212, 218 (5th Cir. 2002).  However, the Fifth Circuit has qualified its opinion in *Watson* by rejecting the idea that an ALJ must in all cases make a separate finding that a claimant has the ability to maintain employment.  *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003); *Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003).  Any such required extra finding must be predicated on the claimant having an impairment that "waxes and wanes" in its manifestation of disabling symptoms.  *Id.*

In this case, Gandara has not offered evidence that his condition "waxes and wanes" in intensity such that his ability to maintain employment was not adequately taken into account in his RFC determination.  An RFC is already "an assessment of an individual's ability to do sustained work-related physical and mental activities, meaning

---

169   Pl.'s Brief at 19.
170   Pl.'s Brief at 19.

eight hours a day for five days a week.  SSR 96-8p at 1, 2.  Since the RFC included a function-by-function analysis by describing sit/stand conditions, and preclusions of certain activities, the ALJ has properly concluded that Gandara would be able to carry out these activities on a sustained basis. *Clark v. Astrue*, 2011 U.S. Dist. LEXIS 100778 (N.D. Tex. Sept. 8, 2011).

## CONCLUSION

The record reveals that the ALJ applied the correct legal standards in the decision at issue and substantial evidence supports the ALJ's determination that Gandara is not disabled under the relevant provisions of the Social Security Act. A review of the pleadings and the record on file reflects that there is no genuine issue of material fact in this case, and summary judgment is therefore appropriate. FED. R. CIV. P. 56(c).

Accordingly, the Court **denies** the Plaintiff's motion and **grants** summary judgment for Defendant.

Signed at Houston, Texas on October ___12___, 2011.

George C. Hanks, Jr.
United States Magistrate Judge